IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | |
| ANTHONY L. VERDINI, | * | Chapter 7 |
|     Debtor | * | |
| | * | Case No.: 1-05-bk-00806 |
| ANTHONY L. VERDINI, | * | |
|     Plaintiff | * | |
| | * | |
| v. | * | Adv. No.: 1-05-ap-00074 |
| | * | |
| SUSAN POIRIER, | * | |
|     Defendant | * | |

## OPINION

### Procedural History

Before the Court is the Complaint of Anthony L. Verdini ("Debtor"), the former spouse of Susan Poirier ("Poirier"), to determine the dischargeability of Debtor's monetary obligations under the parties' Marital Settlement Agreement ("Agreement"). Poirier filed an Answer and Counterclaim to the Complaint alleging that certain obligations under the Agreement were non-dischargeable alimony, and the remainder were nondischargeable, equitable distribution payments. The statutory provisions at issue, codified at 11 U.S.C. §523(a)(5) and (15), govern the dischargeability of alimony and support-related debts and debts arising from the division of marital property.[1]

---

[1] On April 20, 2005, the President signed into law the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), P.L. 109-8, §256, 119 Stat. 23, 11 U.S.C. §101 *et seq.* Although BAPCPA made significant changes to the treatment of domestic support obligations and equitable distribution awards in bankruptcy, these provisions did not become effective until October 17, 2005 and do not affect the resolution of this Complaint.

1

Debtor's bankruptcy case was filed on February 15, 2005, and the instant Complaint was filed on May 4, 2005. A hearing was held on this matter on July 22, 2005. Briefs have been filed, and the matter is ready for decision.[2]

### Factual Findings

Debtor and Poirier were married in 1981 and divorced in 1998. During their marriage the parties formed at least three corporations, including A. Verdini Associates, Inc. ("Verdini Associates"), Dudwick, Schindler, Verdini, Inc. ("DSV") and Schooler Verdini, Inc. ("Schooler"). Each of these corporations was engaged in the business of selling health and beauty products to retail pharmacies. Pursuant to the terms of the Agreement, Debtor transferred his interest in Schooler to Poirier, and she transferred her interest in Verdini Associates and DSV to Debtor. To further compensate Poirier for her interest in the two corporations retained by Debtor, Debtor agreed to pay Poirier $1.1 million over ten years. Half of the debt was described in the Agreement as "alimony" and half was described as "cash payments." A paragraph bearing the heading "Cash Payments" required Debtor to pay Poirier the sum of $4,583.33 per month for a period of 120 months "as partial consideration for the transfer of the business interests and other assets" of the marriage. A paragraph bearing the heading "Alimony" required Debtor to pay Poirier the sum of $4,583.34 per month "for her separate support and maintenance" for a period of 120 months or until her death. The Agreement provided that the "alimony" payments would continue even if Poirier were to remarry. The parties further agreed that the "alimony"

---

[2]I have jurisdiction pursuant to 28 U.S.C. §§157 and 1334. This matter is core pursuant to 28 U.S.C. §157(b)(2)(L). This Opinion and Order constitutes findings of fact and conclusions of law made pursuant to Federal Rule of Bankruptcy Procedure ("FRBP") 7052.

2

payments would be treated as income to Poirier and would be deductible by Debtor for federal income tax purposes.

Between March 1998 and January 2000, Poirier received monthly checks from Verdini Associates in the amount of $9,166.67 in payment of both the "alimony" obligation and the "cash payment" obligation under the Agreement. In late 1998 or early 1999, Verdini Associates lost a major customer creating a substantial reduction in Debtor's income. Debtor eventually stopped making payments to Poirier in 2000 after Verdini Associates and DSV ceased operations.

In contrast, after the parties divorce Schooler thrived. Between 2000 and 2004, Poirier's annual income, as reported to the Internal Revenue Service, ranged from $91,274.00 to $168,457.00. Poirier owns homes in Chatham, Massachusetts and Downingtown, Pennsylvania. Her current business, 4-Sight Marketing, a successor to Schooler, owns a home in Tarpon Springs, Florida where she resides. Poirier has not remarried and has no children.

Debtor is remarried and has two dependent children. His current wife is not employed outside the home. In 2001, Debtor and his wife reported a net loss of $2,181.00 on their federal income tax return, but by 2004, they reported taxable income of $144,474.00 from Debtor's employment. The tax returns he filed jointly with his wife report non-taxable income of $332,651.00 in 2000, $213,387.00 in 2002, and $67,299.00 in 2003 from a pension or annuity fund, which Debtor described as his wife's "inheritance." Debtor testified that the "inheritance" has been virtually depleted through withdrawals used to meet living expenses during the period when Debtor's earnings were minimal and to pay interest on corporate debts guaranteed by Debtor.

3

Debtor is currently employed as a salesman by Zila Neutraceuticals, Inc. at an annual salary of $90,000.00. His net monthly income is $5,226.41, and his schedule of expenses list regular monthly expenditures of $5,142.00. Poirier's current monthly income and expense figures were not put into evidence.

**Discussion**

The matter before the Court requires a determination of whether the payments under a marital settlement agreement may be discharged in bankruptcy under either 11 U.S.C. § 523(a)(5) or 11 U.S.C. § 523(a)(15). Recognizing the importance of upholding support orders for the benefit of a debtor's spouse and children, Section 523(a)(5) of the Bankruptcy Code excepts from discharge debts for alimony, maintenance or support. However, a divorce decree may include a payment provision labeled as "alimony" that, in substance, is a division of property. *In re Gianakis*, 917 F.2d 759 (3d Cir. 1990). Therefore, Section 523(a)(5) renders non-dischargeable only those obligations that are in the nature of support, regardless of how they are characterized in a marital settlement agreement or divorce decree. 11 U.S.C. § 523(a)(5)(B). Even an obligation characterized as a division of property, however, may be discharged if the debtor does not have the financial resources to make payments required, or if a discharge of the obligation will result in a greater benefit to the debtor than create harm to the former spouse. 11 U.S.C. § 523(a)(15). [3]

---

[3] In pertinent part, 11 U.S.C. §523(a)(5) and (15), provide as follows:

> (a) A discharge under section 727 . . . does not discharge an individual debtor from any debt –
>
> * * *
>
> (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a

Exceptions to discharge are to be interpreted narrowly in favor of the debtor. *Gleason v. Thaw,* 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915). While there is "a tension" between the presumption of dischargeability and the purpose of excepting from discharge funds for support of children or of a former spouse, "the Court must remember to interpret exceptions to discharge, including this one, narrowly." *County of Oakland v. Fralick,* 215 B.R. 132, 134 (W.D. Mich. 1991) (citing *In re Chang,* 210 B.R. 578, 581 (9th Cir. 1997)).

In the instant case, there are two distinct obligations at issue, the one created by the paragraph labeled "Alimony" and the one created by the paragraph labeled "Cash Payments."

---

separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that–

\* \* \*

   (B) such debt includes a liability *designated* as alimony, maintenance, or support, unless such debt *is actually* in the nature of alimony, maintenance, or support.

\* \* \*

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless –

   (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor . . . ; or

   (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

11 U.S.C. §523(a)(5), (15) (emphasis added).

With the general guidance from the above-cited cases at hand, I will address each of these obligations under the applicable provision of Section 523.

> a. *Section 523(a)(5) - Is the obligation labeled as "alimony" in the nature of support?*

A former spouse bears the burden of establishing nondischargeability by a preponderance of the evidence in an action under Section 523(a)(5). *Appling v. Rees,* 187 B.R. 27 (Bankr. N.D. Ga. 1995) (debtor husband filed adversary complaint against creditor wife under section 523(a)(5)); *Grogan v. Garner*, 498 U.S. 279 (1991). Thus, under Section 523(a)(5) a creditor spouse must prove that the obligation sought to be found non-dischargeable is related to or stems from the dissolution of the marriage and that it is truly intended to be "alimony, maintenance or support" as those terms are defined under state law. There is no dispute in this case over the first three elements under section 523(a)(5). The debt at issue is directly payable to Poirier, it is designated as alimony, and it is the result of a divorce decree. The dispute centers on the question of whether the debt is in the nature of support. Determining whether an obligation is in the nature of support under section 523(a)(5) is a matter of federal, not state law. *In re Gianakas*, 917 F.2d 759, 762 (3d Cir. 1990). An obligation may qualify as alimony under federal law irrespective of its characterization under state law. *Id.* Courts must look "beyond the label attached to an obligation by a settlement agreement to examine its true nature." *Id.*; *In re Pollack*, 150 B.R. 584 (Bankr. M.D. Pa. 1992); *Buccino v. Buccino*, 580 A.2d 13 (Pa. Superior Ct. 1990).

The true nature of the obligation depends upon the intent of the parties at the time of the settlement agreement. *Gianakas*, 917 F.2d at 762; *Pollack*, 150 B.R. at 591. To determine the parties' intent, *Gianakas* identified three indicators to be examined by the trial court: (1) "the

6

language and substance of the agreement in the context of surrounding circumstances, using extrinsic evidence if necessary;" (2) "the parties' financial circumstances at the time of the settlement;" and (3) "the function served by the obligation at the time of the divorce or settlement." *Gianakas*, 917 F.2d at 762. This examination is limited to the parties' intent at the time of the Agreement, not the parties' subsequent intent or understanding of the Agreement. *Id.* ("inquiries into present need would put federal courts in the position of modifying matrimonial decrees of state courts").

                *1.     Indicator One – Language and substance of the agreement*

The Agreement contains two different provisions for payments to be made by Debtor to Poirier. Poirier concedes that the provision labeled "Cash Payments" is not in the nature of alimony, maintenance or support. Therefore, the payments made under this provision of the Agreement are not excepted from discharge under Section 523(a)(5) and may be discharged if they meet one of criteria set forth Section 523(a)(15). However, Poirier asserts that the provision labeled "Alimony" is in the nature of support and, thus, these payments are non-dischargeable under Section 523(a)(5).

In Pennsylvania, "'[a]limony' is a payment of support by one former spouse following divorce made to meet needs of the other former spouse who is unable to support himself or herself through appropriate employment." *Johnson v. Johnson*, 864 A.2d 1224, 1229 (Pa.Super. 2004) (citing *Miller v. Miller,* 744 A.2d 778 (Pa.Super.1999)). The Pennsylvania state courts have held that "[a]limony 'is based upon reasonable needs in accordance with the lifestyle and standard of living established by the parties during the marriage, as well as the payor's ability to pay.' Moreover, '[a]limony following a divorce is a *secondary remedy* and is available only

7

where economic justice and the reasonable needs of the parties cannot be achieved by way of an equitable distribution award and development of an appropriate employable skill.'" *Teodorski v. Teodorski*, 857 A.2d 194, 200 (Pa.Super. 2004) (quoting *Moran v. Moran,* 839 A.2d 1091, 1096-97 (Pa.Super. 2003) (italics in the original)).

According to these criteria, the term "alimony" cannot be accurately applied to the payments to Poirier because the Agreement indicates that such payments, though labeled "alimony," were in fact intended to compensate Poirier for the unequal distribution of the parties' interest in the corporate assets. Any doubt about this intent is erased by correspondence between the parties' divorce attorneys. Poirier's counsel specifically stated in correspondence to Debtor's counsel that the payments labeled "alimony" "were not intended to satisfy an alimony claim; they were a way of structuring the buy-out [of Poirier's interest in the two corporations] to offer an additional benefit to [Debtor]." (Exhibit P-3.) Accordingly, I conclude that the language and substance of the agreement support Debtor's assertions that the payments labeled "alimony" were not intended to be in the nature of support and were intended by the parties to be a division of property.

> 2. *Indicator Two – Parties financial circumstances at the time of the settlement*

"The fact that one spouse . . . was not employed, or was employed in a less remunerative position than the other spouse are aspects of the parties' financial circumstances at the time the obligation was fixed which shed light on the inquiry into the nature of the obligation of support." *Gianakas*, 917 F.2d at 763 (citing *Shaver v. Shaver*, 736 F.2d 1314, 1317 (9th Cir. 1984)). Debtor testified that he and Poirier each received a salary of $150,000.00 in 1997. Debtor's 1998 tax return shows earnings of $157,300.00 and an adjusted gross income of $164,994.00.

8

Poirier's 1998 earnings were $66,287.00. On its face, this disparity in income supports a finding that the alimony payments were in the nature of support. But the terms of the Agreement were negotiated in early 1998 when the parties may not have foreseen the relative financial status of Debtor and Poirier at the end of the year. In any event, the statement by Poirier's divorce counsel that the payments were not intended to serve as alimony weighs more heavily in determining the parties' intent than a comparison of the parties' respective earnings nine months after the Agreement was signed.

> 3. *Indicator Three – Function served by the obligation at the time of the settlement*

"To the extent that the obligation serves the financial purpose behind alimony (or support or maintenance), it is nondischargeable. To the extent the debt is to divide property irrespective of financial need, it is dischargeable." *Buccino*, 580 A.2d at 19 (citing *In re Jenkins*, 94 B.R. 355 (Bankr. E.D. Pa. 1988)). "An obligation that serves to maintain daily necessities such as food, housing and transportation is indicative of a debt intended to be in the nature of support." *Buccino,* 580 A.2d at 19. "Property division is based on each parties' right to a fair share of the property accumulated during the marriage." *Id.* at 21. The debt in the instant case was created in an attempt to evenly divide an odd number of corporate entities. There is no extrinsic evidence that the obligation was intended to assist Poirier in providing for her support. Further, the Agreement provides for the "alimony" payments to Poirier to continue even if she were to remarry, which, while not dispositive, suggests that these payments were not intended to provide for her ordinary living expenses. *See Appling,* 187 B.R. at 29 (fact that payments awarded by jury in divorce action were to continue beyond date of debtor's spouse's remarriage indicated that payments were not intended as alimony); *In re Hammermeister,* 270 B.R. 863, 872 (Bankr.

9

S.D. Ohio 2001) (termination of payment upon remarriage of creditor spouse is one of "earmarks of traditional alimony award."); *Cf Shaver*, 736 F.2d at 1316 ("if an obligation terminates on the death or remarriage of the recipient spouse, a court may be inclined to classify the agreement as one for support").

The analysis required under *Gianakas* shows that the funds at issue were not intended to provide for Poirier's support. In her trial briefs, Poirier does not address the *Gianakas* factors, but argues primarily that Debtor is estopped from denying that the payments were alimony because he deducted the payments on his federal income tax returns. Poirier relies on cases from the Fourth and Fifth Circuit Courts of Appeal to make this argument. These cases are not binding precedent on this Court, and there is no reason to conclude that the Third Circuit would find this one factor to be compelling. "Those courts which have looked to the tax treatment of the obligation . . . have usually done so as part of an overall analysis involving many other factors, and have rarely found the tax treatment of a debt dispositive on dischargeability." Sommer, McGarity & King, Collier Family Law and the Bankruptcy Code, § 6.04[10] at p. 6-48 (1995), *quoted in In re Sternberg*, 85 F.3d 1400, 1406 (9th Cir. 1996)(overruled on other grounds). Thus, I conclude that the payments labeled as "alimony" in the instant case are not actually in the nature of support and, therefore, are not excepted from discharge under 11 U.S.C. § 523(a)(5).

10

> b. *Section 523(a)(15) – Are the payments dischargeable under either the ability to pay or relative impact tests?*

Obligations arising under a marital settlement agreement may be found to be non-dischargeable even if they are not in the nature of support. As discussed above, there are two alternative "tests" under which a debt may be found to be dischargeable under Section 523(a)(15). A court may find that a debtor does not have the ability to pay the debt ("ability to pay test") or that discharging the debt will provide a benefit to the debtor which is greater than the detriment experienced by the former spouse ("relative impact test"). Debtor asserts that the "Alimony" and "Cash Payments" obligations are dischargeable under either test.

The objecting creditor bears the burden of proof to establish that the debt is of a type excepted from discharge under § 523(a)(15). Once the creditor has provided sufficient proof as to the type of the debt, the burden shifts to the debtor to prove either of the exceptions to non-dischargeability contained in subsections (A) or (B). *In re Crosswhite*, 148 F.3d 879, 884-885 (7th Cir.1998); *In re Gamble*, 143 F.3d 223, 226 (5th Cir.1998); *In re Moeder*, 220 B.R. 52, 56 (8th Cir. BAP 1998). The debtor must make these showings by a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991). Upon a sufficient showing by the debtor, the burden of proof shifts to the creditor to rebut the debtor's proof. *See In re Mannix,* 303 B.R. 587, 595 (Bankr. M.D. Pa. 2003) ("a sufficient showing under either exception shifts the burden back to [the creditor] to prove otherwise."); *Davis v. Cox*, 356 F.3d 76, 96 -97 (1st Cir. 2004)*; In re Lawrence,* 237 B.R. 61, 83 (Bankr. D.N.J. 1999).

There is "significant disagreement" among the bankruptcy courts as to the appropriate date on which the parties' relative incomes are to be measured for purposes of either the ability to pay test or the relative impact test. *In re Jodoin*, 209 B.R. 132, 141-42 (9th Cir. BAP 1997).

11

Some courts use the date of the petition, others use the date of the hearing and still others scrutinize the entire period between the filing of the petition and the hearing. *Id.* 209 B.R. at 142, fn. 25 (citing *In re Becker,* 185 B.R. at 567, 570 (Bankr. W.D. Mo. 1995)). As the parties' relative financial status does not seem to have changed dramatically between the date of the filing of the petition and the date of the hearing, I find it unnecessary to decide which date is more appropriate.[4]

        1.     *The ability to pay test*

The ability to pay test in Section 523(a)(15)(A) enables the bankruptcy court to consider both present and future prospects for repayment from a debtor's disposable income. *Davis,* 356 F.3d at 97; *In re Feldmann*, 220 B.R. 138, 145-46 (Bankr. N.D. Ga. 1998). It is essentially a mathematical determination in which the court must calculate the extent, if any, to which a debtor's income exceeds his expenses after examining the reasonableness of the debtor's expenditures. *In re Mannix,* 303 B.R. at 597; *In re O'Shaughnessy*, 301 B.R. 24 (Bankr. N.D. Iowa 2003); *In re Erd*, 282 B.R. 620, 625-26 (Bankr. N.D. Ohio 2002); *In re Haines*, 210 B.R. 586 (Bankr. S.D. Cal. 1997) (court not required to blindly accept debtor's protestations that net disposable income unavailable to pay obligation). The language of Section 523(a)(15)(A) parallels the provisions of Section 1325(b), which has encouraged many courts to adopt the

---

[4] In arguing his relative lack of income, Debtor's brief shows that in the cumulative period between 2000 and 2004, inclusive, the "adjusted gross income" of Debtor and his wife was $207,538, while Poirier's individual adjusted gross income was $600,099. This assertion is somewhat misleading because when the inheritance received by Debtor's wife is added to the adjusted gross income, the available income for Debtor's household is $820,875. Regardless, the accuracy of these historical numbers is irrelevant to the Court's analysis under Section 523(a)(15), which focuses on the financial status of the parties on and after the petition was filed, not on their pre-petition status.

disposable income test in a Chapter 13 proceeding to analyze a debtor's ability to pay under Section 523(a)(15)(A). *In re Ballard*, 2001 WL 1946239, *16 (citing cases).

According to the testimony, Debtor's current monthly net salary is $5,142.00 and his monthly expenses are $5,226.00.[5] Poirier seeks total payments of $9,166.00 per month. Poirier challenges some of Debtor's claimed expenditures as being excessive, and the Court, in part, agrees. Poirier asserts that Debtor's monthly mortgage payment of $2,677.00, his monthly life insurance payment of $600.00 and his monthly automobile payments of $1,022.71 are inflated. As to the amount of his mortgage payment, Debtor testified that he was compelled by his loss of income to refinance his house to employ some of its equity for daily living expenses.[6] Even if the analysis under Section 1325(b)(2) were applied to determine disposable income in the within case, Debtor's equity in the real estate he owns with his wife as tenants by the entirety would not be considered in determining Debtor's disposable income. A finding that the mortgage payment was excessive might require Debtor and his wife to sell their home, but it would not generate funds to satisfy Poirier's claim. Further, given their circumstances, Debtor and his family could easily justify mortgage payments of $1,800.00 to $2,000.00 per month, which would only generate disposable income of $600.00 to $800.00 per month from the reduction in housing expenses. Assuming Debtor's expenditures for life insurance and automobile expenses could be cut in half, the total net income available to satisfy Poirier's claim would be approximately

---

[5]Debtor's Schedules "I" and "J" showed income of $5106 and expenses of $6112 as of the date of the Petition. Debtor testified that his expenses have since been reduced by several hundred dollars a month due to the termination of an automobile lease.

[6]Debtor has substantial equity in his home, which he has exempted under 11 U.S.C. § 522(b)(2).

$1,600.00 per month – far short of Poirier's claim of $9,166.00 per month.[7] Even if all of his expenses were disallowed as unreasonable, he does not have the ability to pay the full amount of the monthly payment demanded by Poirier. Therefore, I find that Debtor lacks the ability to pay his marital obligation to Poirier.[8]

2. *The relative impact test*

If a debtor demonstrates that he does not have the ability to pay a marital debt, the debtor prevails without having to prove that discharging the debt will result in a benefit to the debtor that outweighs the detriment to his former spouse. *In re Gilpin*, 287 B.R. 921 (Bankr. C.D. Ill. 2002). Therefore, it is not necessary for the Court to apply the test found at Section 523(a)(15)(B). However, if I had found that Debtor had the ability to pay the debt, I would have been unable to determine that the debt was dischargeable under Section 523(a)(15)(B) because Debtor failed to satisfy the burden of proving that the discharge of the debt would result in a greater benefit to him than it would inflict harm on Poirier.

---

[7]Neither party raised the issue of whether the Court may grant a partial discharge of an obligation under Section 523(a)(15). Although permitted by some courts based on legislative intent, other courts have determined that they lack the authority to grant partial discharges absent specific statutory authority. *See In re Mannix*, 303 B.R. at 598-99 (discussing cases which have permitted partial discharge and those which have taken an "all or nothing" approach).

[8]Concerns of federalism and comity suggest that this Court may not restructure the payments as set forth in the Agreement and incorporated in the parties divorce decree. Although Debtor may have adequate disposable income to pay the marital obligations if the monthly amount of the "Alimony" and "Cash Payments" were reduced and the payment period extended significantly (forty to fifty years), it is not appropriate for this Court to rework the parties' Agreement.

The "relative impact test" requires a fact-intensive analysis of the economic circumstances of the parties not only at the time of trial, but also projected into the future. *See, e.g., In re Mannix*, 303 B.R. at 600; *In re Celani,* 194 B.R. 719 (Bankr. D. Conn. 1996); *In re Gantz*, 192 B.R. 932 (Bankr. N.D. Ill. 1996). "[A]n assessment of benefit and detriment under the second exception implicates an analysis of the totality of the circumstances, not just a comparison of the parties' relative net worths." *Gamble*, 143 F.3d at 226. Factors a court should consider include the income and expenses of both parties as well as the health, job skills, training, age and education of the parties and their dependents. *In re Metzger*, 232 B.R. 658, 665 (Bankr. E.D. Va. 1999); *In re Morris,* 197 B.R. 236, 245 (Bankr. N.D. W.Va. 1996). Although there is sufficient evidence to determine the current financial status of Debtor, there is no information in the record regarding Poirier's expenses or other factors that would enable the Court to perform the appropriate balancing of hardships and benefits required under Section 523 (a)(15)(B). Therefore, the Court finds that Debtor has failed to provide adequate proof to support a finding of dischargeability under the relative impact test.

For the reasons set forth above, the Court finds that none of the obligations owed by Debtor to Poirier in the Agreement are in the nature of support under Section 523(a)(5). Therefore, they are dischargeable unless they fail to meet both of the alternative tests set forth in Section 523(a)(15). Since Debtor has shown that he lacks the financial resources to satisfy the obligation to Poirier, he has met the "ability to pay test under Section 523(a)(15)(A).

Case 1:05-ap-00074-MDF    Doc 36    Filed 12/02/05    Entered 12/02/05 10:59:27    Desc
Main Document    Page 15 of 16

Consequently, both the "Alimony" and "Cash Payment" obligations are dischargeable. An appropriate order follows.

BY THE COURT,

*[signature: Mary D. France]*
Bankruptcy Judge

Date: December 2, 2005

*This electronic order is signed and filed on the same date.*